**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| BARBARA AVILA; MIGUEL AVILA, *Plaintiffs-Appellants*, v. SPOKANE SCHOOL DISTRICT 81, *Defendant-Appellee.* | No. 14-35965 D.C. No. 2:10-cv-00408-EFS OPINION |

Appeal from the United States District Court
for the Eastern District of Washington
Edward F. Shea, District Judge, Presiding

Argued and Submitted December 5, 2016
Seattle, Washington

Filed March 30, 2017

Before: M. Margaret McKeown, Richard C. Tallman,
and Morgan Christen, Circuit Judges.

Opinion by Judge Christen

## SUMMARY[*]

### Individuals with Disabilities Education Act

The panel reversed the district court's dismissal, as barred by the statute of limitations, of claims under the Individuals with Disabilities Education Act.

The plaintiffs claimed that their child's school district failed to identify his disability or assess him for autism in 2006 and 2007. Agreeing with the Third Circuit, the panel held that 20 U.S.C. § 1415(f)(3)(C) requires courts to bar only claims brought more than two years after the parents or local education agency "knew or should have known" about the actions forming the basis of the complaint. Because the district court barred all claims "occurring" more than two years before the plaintiffs filed their administrative due process complaint, the panel remanded for the district court to determine when the plaintiffs knew or should have known about the actions forming the basis of their complaint.

The panel addressed another claim in a memorandum disposition filed concurrently with its opinion.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Mark A. Silver (argued) and Jeffrey A. Zachman, Denton US LLP, Atlanta, Georgia; Richard D. Salgado, Dentons US LLP, Dallas, Texas; for Plaintiffs-Appellants.

Gregory Lee Stevens (argued), Stevens Clay P.S., Spokane, Washington, for Defendant-Appellee.

**OPINION**

CHRISTEN, Circuit Judge:

The Avilas, parents of a student in Spokane School District 81, appeal the district court's order dismissing their claims that the District violated the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq*. The Avilas argue that the district court misapplied the statute of limitations in 20 U.S.C. § 1415(f)(3)(C) to their claims that the District failed to identify their child's disability or assess him for autism in 2006 and 2007.[1]

In a question of first impression for this court, we conclude that the IDEA's statute of limitations requires courts to bar only claims brought more than two years after the parents or local educational agency "knew or should have known" about the actions forming the basis of the complaint. Because the district court barred all claims "occurring" more than two years before the Avilas filed their due process

---

[1] The Avilas' claim that the District violated the IDEA by failing to assess their child for dyslexia and dysgraphia is addressed in an unpublished memorandum disposition filed concurrently with this opinion.

complaint, we remand so that the district court can determine when the Avilas knew or should have known about the actions forming the basis of their complaint.

## BACKGROUND

Appellants Barbara and Miguel Avila are the parents of G.A., a student in Spokane School District 81. In 2006, when G.A. was five, the Avilas asked the District to evaluate him for special education services based on "[b]ehavior" issues. One of the reasons for this request was a preschool teacher's concern that G.A. might be "showing slight signs of autism." In December 2006, a school psychologist evaluated G.A. and concluded that although he displayed some "behaviors of concern," G.A.'s behavior was not severe enough to qualify for special education services under the IDEA. G.A.'s mother was given a copy of the evaluation report and signed a form stating that she agreed with the evaluation results.

In the fall of 2007, G.A. enrolled in kindergarten. A private third-party physician diagnosed him with Asperger's Disorder in October 2007, and the Avilas requested that the District reevaluate G.A.'s eligibility for special education services. A school psychologist concluded in a reevaluation dated April 14, 2008 that G.A. was eligible for special educational services under the category of autism and, from April 2008 until February 2009, the Avilas and representatives from the District met multiple times to discuss an Individualized Education Program (IEP) for him.[2] The

---

[2] The IDEA requires IEPs, which are "written statement[s] for each child with a disability," as part of its mandate of ensuring students are provided with a free appropriate public education. *See* 20 U.S.C. §§ 1401(9)(D), 1414(d).

Avilas and the District initially disagreed, but eventually signed an IEP in February 2009. G.A. then began attending ADAPT, a specialized program in the District for students with autism.

About a year later, the District reevaluated G.A., assessing his behavior, speech and language, occupational therapy needs, and academic achievements, including reading, writing, and mathematics. The District then drafted another IEP. The Avilas did not agree with the reevaluation's findings and did not sign it. Instead, they requested an Independent Educational Evaluation (IEE) at the District's expense. *See* Wash. Admin. Code § 392-172A-05005(1). The District denied this request.

The Avilas filed a request for a due process hearing with the Washington State Office of Administrative Hearings on April 26, 2010. As required by law after the denial of a parent's request for an IEE, the District also initiated a due process hearing with the Washington State Office of Administrative Hearings to consider whether the District's reevaluation was sufficient. *See* Wash. Admin. Code § 392-172A-05005(2)(c). Ultimately, the ALJ ruled that the District's reevaluation was appropriate and that the Avilas were not entitled to an IEE at the District's expense. In a separate order, the ALJ ruled in favor of the District on all other claims. Specifically, he concluded that eleven of the Avilas' pre-April 2008 claims were time-barred. These claims consisted of nine procedural claims concerning the District's alleged failure to give prior written notice to the Avilas and two substantive claims. The substantive claims alleged that the District denied G.A. a free appropriate public education (FAPE) by failing to identify him as a child with a disability in 2006, and that the District failed to assess his

suspected disability in 2006 and 2007.  The ALJ concluded that no statutory exceptions applied and held that the Avilas' claims were time-barred, reasoning "[t]he Parents['] due process complaint was filed on April 26, 2010 and any complaint by Parents regarding the District actions or inactions occurring prior to April 26, 2008 are barred by the statu[t]e of limitations."**[3]**

The Avilas timely appealed both decisions to the United States District Court for the Eastern District of Washington, where their appeals were consolidated.  The consolidated appeal addressed seven of the claims the ALJ deemed time-barred: five of their prior written notice claims and the two substantive claims arguing denials of G.A.'s right to a FAPE.

The district court agreed with the ALJ's determination that neither exception to the statute of limitations applied and affirmed the ALJ's decision that the IDEA's two-year limitations period barred the Avilas' claims arising before April 26, 2008.  The district court also affirmed the ALJ's ruling that the April 2010 reevaluation was appropriate, that the IEP provided G.A. with a FAPE, and that the Avilas were not entitled to an IEE at the District's expense.  The Avilas timely appealed to this court.  They argue that the district court improperly applied the IDEA's statute of limitations to their two substantive claims.  They do not appeal the district court's ruling that their five remaining prior written notice claims lack merit.

---

**[3]** There are two express exceptions to the IDEA's two-year statute of limitations: (1) when a local educational agency misrepresents that it has resolved issues underlying a claim; and (2) when a local educational agency withholds necessary information. 20 U.S.C. § 1415(f)(3)(D). The Avilas do not argue that either of these exceptions apply.

**JURISDICTION AND STANDARD OF REVIEW**

The district court had jurisdiction pursuant to 20 U.S.C. § 1415(i)(2)(A) and 28 U.S.C. § 1331. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

Our court reviews de novo the district court's conclusions of law, including the question whether a claim is barred by a statute of limitations. *See Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1194 (9th Cir. 2014).

**DISCUSSION**

**I. The IDEA's statute of limitations requires courts to apply the discovery rule.**

*A. Statutory overview*

"The IDEA provides federal funds to assist state and local agencies in educating children with disabilities, but conditions such funding on compliance with certain goals and procedures." *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1469 (9th Cir. 1993). The IDEA seeks "to ensure that all children with disabilities have available to them a free appropriate public education." 20 U.S.C. § 1400(d)(1)(A). "A FAPE is defined as an education that is provided at public expense, meets the standards of the state educational agency, and is in conformity with the student's IEP." *Baquerizo v. Garden Grove Unified Sch. Dist.*, 826 F.3d 1179, 1184 (9th Cir. 2016) (citing 20 U.S.C. § 1401(9)). Upon request of a parent or agency, a local educational agency must "conduct a full and individual initial evaluation" to determine whether a child has a disability and the child's educational needs. 20 U.S.C. § 1414(a)(1)(A)–(C). If a child is determined to

have a disability, a team including a local educational agency representative, teachers, parents, and in some cases, the child, formulates an IEP.[4] § 1414(d)(1)(B). The local educational agency must conduct a reevaluation of the child if it "determines that the educational or related services needs, including improved academic achievement and functional performance, of the child warrant a reevaluation," or if a reevaluation is requested by the child's parents or teacher. § 1414(a)(2)(A).

The IDEA permits parents and school districts to file due process complaints "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." § 1415(b)(6)(A). The state educational agency or local educational agency hears due process complaints in administrative due process hearings. § 1415(f)(1)(A). If a party disagrees with the administrative findings and decision, the IDEA allows for judicial review in state courts and federal district courts. § 1415(i)(2)(A).

### B. The IDEA's statute of limitations

Prior to 2004, the IDEA did not include a statute of limitations for due process hearings or complaints. *See* 20 U.S.C. § 1415(b)(6) (1999); *S.V. v. Sherwood Sch. Dist.*, 254 F.3d 877, 879 (9th Cir. 2001) ("The IDEA specifies no limitations period governing either a plaintiff's request for an

---

[4] An IEP includes the following: 1) a statement about the child's level of academic achievement; 2) "measurable annual goals"; 3) a description of how the child's progress towards the goals will be measured; and 4) a statement of the special education and other services to be provided. 20 U.S.C. § 1414(d)(1)(A).

administrative hearing *or* the filing of a civil action."). Congress amended the IDEA in 2004 to add a two-year statute of limitations period that is now codified in two different provisions of the IDEA: 20 U.S.C. § 1415(b)(6)(B) and 20 U.S.C. § 1415(f)(3)(C).[5] Our circuit has not addressed these amendments, but in *G.L. v. Ligonier Valley School District Authority*, 802 F.3d 601 (3d Cir. 2015), the Third Circuit described § 1415(b)(6)(B) and § 1415(f)(3)(C) as alike "in almost all respects" except for one glaring ambiguity: "§ 1415(b)(6)(B)'s two-year limitations period runs backward instead of forward from the reasonable discovery date." *Id.* at 610.

The Avilas contend that § 1415(f)(3)(C) requires this court to apply a discovery rule to IDEA claims, meaning that the statute of limitations is triggered when "a plaintiff discovers, or reasonably could have discovered, his claim." *See O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1147 (9th Cir. 2002). The District does not dispute that the discovery rule should apply to trigger the statute of limitations, but argues that the district court *did* apply the discovery rule and that the Avilas' claims are barred because they failed to file suit within two years after they knew or should have known about their claims.

---

[5] The events underlying this action took place from 2006 to April 2010, and the applicable version of the IDEA was in effect from 2004 to October 2010. *See Amanda J. ex rel. Annette J. v. Clark Cty. Sch. Dist.*, 267 F.3d 877, 882 n.1 (9th Cir. 2001) (applying the 1994 version of IDEA to events that took place in 1995, despite 1997 revision of IDEA). The 2010 amendments do not materially affect the analysis or outcome of this case. *See* Pub. L. No. 111-256, 124 Stat. 2643 (2010) (amending the IDEA to change references from "mental retardation" to "intellectual disabilities").

*C. Analysis*

The application of the IDEA's statute of limitations is a question of first impression for this court: we have not squarely addressed the "knew or should have known" standard in the IDEA or the seemingly contradictory provisions in § 1415(b)(6)(B) and § 1415(f)(3)(C). In the first federal appellate decision addressing how § 1415(b)(6)(B) and § 1415(f)(3)(C) should be reconciled, the Third Circuit concluded that the IDEA's statute of limitations requires courts to apply the discovery rule described in § 1415(f)(3)(C). *Ligonier*, 802 F.3d at 625. The statutory text of the IDEA, including its language and context, persuade us that the Third Circuit's approach in *Ligonier* is correct and that the IDEA's statute of limitations requires courts to apply the discovery rule described in § 1415(f)(3)(C). The Department of Education's interpretation of the 2004 statutory amendments and the associated legislative history support this reading of the statute.

"When interpreting a statute, we are guided by the fundamental canons of statutory construction and begin with the statutory text." *United States v. Neal*, 776 F.3d 645, 652 (9th Cir. 2015) (citing *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004)). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." *Geo-Energy Partners-1983 Ltd. v. Salazar*, 613 F.3d 946, 956 (9th Cir. 2010) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). "If the statutory text is ambiguous, we employ other tools, such as legislative history, to construe the meaning of

ambiguous terms." *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1118 (9th Cir. 2015).

Read in isolation, § 1415(f)(3)(C) appears straightforward. Entitled "Timeline for requesting hearing," it states:

> A parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for requesting such a hearing under this subchapter, in such time as the State law allows.

§ 1415(f)(3)(C). However, an ambiguity arises when § 1415(f)(3)(C) is read in conjunction with § 1415(b)(6)(B). The latter states, under the heading "Types of procedures," that the IDEA allows:

> [An opportunity for any party to present a complaint] which sets forth an alleged violation that occurred not more than 2 years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for presenting such a complaint under this subchapter, in such time as the State law allows . . . .

§ 1415(b)(6)(B).

The Third Circuit's *Ligonier* decision recognized that litigants have advanced various interpretations of the IDEA's statute of limitations: (1) the occurrence rule suggested by § 1415(b)(6)(B), under which the statute of limitations begins to run on the date the injury occurs; (2) the discovery rule provided in § 1415(f)(3)(C); or (3) the "2+2" rule. *Ligonier*, 802 F.3d at 607, 612–15. Under the 2+2 rule, the statute of limitations is triggered when a plaintiff knew or should have known of his claim, but the scope of redressable harm is limited to the "two years *before* the reasonable discovery date through the date the complaint was filed, which could be up to two years *after* the reasonable discovery date, for a maximum period of relief of four years." *Id.* at 607.

We first conclude that Congress did not intend the IDEA's statute of limitations to be governed by a strict occurrence rule. Both § 1415(b)(6)(B) and § 1415(f)(3)(C) include language pegging the limitations period to the date on which the parent or agency "knew or should have known about the alleged action that forms the basis of the complaint," not the date on which the action occurred. *See* § 1415(b)(6)(B), (f)(3)(C). If Congress intended a strict occurrence rule, there would have been no need to include the "knew or should have known" language in § 1415(b)(6)(B) and § 1415(f)(3)(C).

The text of the two provisions also undercuts the 2+2 rule. Both § 1415(b)(6)(B) and § 1415(f)(3)(C) allow the two-year statute of limitations to be replaced by "an explicit time limitation . . . in such time as the State law allows." § 1415(b)(6)(B), (f)(3)(C). If states adopt their own statutes of limitations pursuant to these provisions, § 1415(b)(6)(B) and § 1415(f)(3)(C) provide that the federal exceptions to the statute of limitations still apply, *see* 20 U.S.C.

§ 1415(b)(6)(B), (f)(3)(C)–(D), and it would make little sense to incorporate the federal exceptions for equitable tolling if § 1415(b)(6)(B) were a remedy cap rather than a preview of the statute of limitations set forth in § 1415(f)(3)(C). *See Ligonier*, 802 F.3d at 615. We hold that the text of the IDEA cannot support the "2+2" construction of the statute.

The next question is how to reconcile these two seemingly conflicting provisions. Looking to "the specific context in which the language is used and the broader context of the statute as a whole," *Geo-Energy Partners-1983*, 613 F.3d at 956, § 1415(b) provides an overview of the other provisions of § 1415, including § 1415(f), while § 1415(f)(3)(C) addresses in more specific language the allowable period for requesting a due process hearing. *See Ligonier*, 802 F.3d at 616–18. Section 1415 is entitled "Procedural Safeguards," with subsection (a) mandating that any state educational agency that receives federal assistance under the subchapter must establish and maintain certain procedures. Subsection (b), entitled "Types of procedures," broadly outlines the many procedures state educational agencies are required to adopt, including the opportunity for any party to present a complaint regarding the identification, evaluation or educational placement of the child, or the provision of a FAPE. § 1415(b).

In contrast, § 1415(f), entitled "Impartial due process hearing," describes in detail the procedures required whenever a parent or local education agency files a due process complaint under subsection (b)(6) or (k). Section 1415(f)(2) addresses evaluations and recommendations to be prepared in advance of a due process hearing. Section 1415(f)(3), entitled "Limitations on hearing," is divided into "Persons conducting hearing," "Subject matter of hearing,"

and "Timeline for requesting hearing." § 1415(f)(3)(A)–(C). It is this last provision, located in the subsection that expressly limits the right to a due process hearing, which specifies that the hearing must be requested within two years from the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint. § 1415(f)(3)(C). Thus, the structure of § 1415 supports the conclusion that "§ 1415(b)(6)(B), though poorly penned, was intended merely as a synopsis of § 1415(f)(3)[(C)]'s" "knew or should have known" benchmark for the statute of limitations. *See Ligonier,* 802 F.3d at 618.

We have considered that Congress might have intended different limitations periods for presenting complaints and requesting due process hearings, but that possibility is inconsistent with the overall statutory scheme. Read that way, subsections (b) and (f) cannot be harmonized because § 1415(b) would bar a complaint arising from conduct occurring more than two years before the discovery date, but § 1415(f) would preserve the right to request a due process hearing concerning the same conduct. Our task is to harmonize the statutory scheme as a whole, and our interpretation of § 1415 as having just one applicable limitations period is consistent with the Department of Education's position that the two provisions provide the same limitations period, discussed *infra*. *See U.S. W. Commc'ns, Inc. v. Hamilton*, 224 F.3d 1049, 1053 (9th Cir. 2000) (stating the duty to harmonize statutory provisions is "particularly acute" when the provisions are enacted at the same time and are part of the same statute).

Other sources of statutory interpretation confirm this reading. First, the broader context of the IDEA shows that it

has a wide-ranging remedial purpose intended to protect the rights of children with disabilities and their parents. One express purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). As the Supreme Court stated, "[a] reading of the [IDEA] that left parents without an adequate remedy when a school district unreasonably failed to identify a child with disabilities would not comport with Congress' acknowledgment of the paramount importance of properly identifying each child eligible for services." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 245 (2009). The broad purpose of the IDEA is clear and has been acknowledged repeatedly by our court. *See E.M. ex rel. E.M. v. Pajaro Valley Unified Sch. Dist. Office of Admin. Hearings*, 758 F.3d 1162, 1173 (9th Cir. 2014) (citing *Forest Grove*, 557 U.S. at 244–45); *Michael P. v. Dep't of Educ.*, 656 F.3d 1057, 1060 (9th Cir. 2011) (same); *Compton Unified Sch. Dist. v. Addison*, 598 F.3d 1181, 1184 (9th Cir. 2010) (same). Cutting off children's or parents' remedies if violations are not discovered within two years, as the occurrence rule and the 2+2 rule would do, is not consistent with the IDEA's remedial purpose. *See Ligonier,* 802 F.3d at 619–20 (concluding that applying the occurrence or 2+2 rules would go against the broad remedial purpose of the IDEA and serve as a *sub silentio* repeal of prior court decisions confirming the intent of the IDEA).

In commentary addressing its enabling regulations, the Department of Education (DOE) stated that it interprets § 1415(b)(6)(B) and § 1415(f)(3)(C) to provide the same limitations period. Assistance to States for the Education of

Children with Disabilities and Preschool Grants for Children with Disabilities, 71 Fed. Reg. 46,706 (Aug. 14, 2006). The DOE's interpretation necessarily rejects the 2+2 rule, which assumes that § 1415(b)(6)(B) and § 1415(f)(3)(C) provide two different limitations periods, although the agency's interpretation does not offer any guidance on whether the discovery rule or occurrence rule should prevail. As the Third Circuit noted, the DOE's interpretation of its own regulation should be respected if "it has the 'power to persuade.'" *Ligonier*, 802 F.3d at 621 (quoting *Gonzales v. Oregon*, 546 U.S. 243, 256 (2006) and *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). The DOE's rejection of the 2+2 rule is in accord with the text of § 1415(f)(3)(C), our contextual reading of § 1415(b) as providing an overview of procedures required by the IDEA, and the IDEA's broader statutory scheme.

The IDEA's legislative history is in accord. When the 2004 IDEA amendments were crafted, the House of Representatives' initial proposal was for a one-year statute of limitations that relied on the occurrence rule and required that a complaint "set forth a violation that occurred not more than one year before the complaint is filed." H.R. Rep. 108-77, at 36 (2003). The Senate version of the bill included the wording that later became § 1415(f)(3)(C). S. Rep. 108-185, at 222 (2003) ("A parent or public agency shall request an impartial due process hearing within 2 years of the date the parent or public agency knew or should have known about the alleged action that forms the basis of the complaint . . . ."). Considering the two draft bills, the Third Circuit concluded:

> The conference committee then incorporated
> the Senate's version at § 1415(f) and the
> House's version in the summary listing at

> § 1415(b). When it did so, however, it omitted
> to change the backward-looking framework of
> the House's version to the forward-looking
> framework of the Senate's. Thus was created
> the problem we grapple with today.

*Ligonier*, 802 F.3d at 623. This legislative history suggests that Congress intended to adopt the discovery rule, not the occurrence rule, in the final version of the 2004 amendments. *See id*.

The text and purpose of the IDEA, the DOE's interpretation of the Act, and the legislative history of the 2004 amendments all lead us to the same conclusion. We hold the IDEA's statute of limitations requires courts to apply the discovery rule without limiting redressability to the two-year period that precedes the date when "the parent or agency knew or should have known about the alleged action that forms the basis of the complaint." § 1415(f)(3)(C).

## II. The district court erred by concluding that the IDEA's two-year statute of limitations necessarily barred claims arising in 2006 and 2007.

Having concluded that the IDEA's statute of limitations is triggered when "the parent or agency *knew or should have known* about the alleged action that forms the basis of the complaint," we turn to the Avilas' claims. *See* § 1415(f)(3)(C) (emphasis added). In dismissing the Avilas' complaint, the district court cited the correct standard from § 1415(f)(3)(C), but concluded, "Parents' due process complaint was made April 26, 2010. Accordingly, unless an exception is shown, the Court finds any alleged misconduct prior to April 26, 2008, was not timely raised by Parents." In

other words, apart from considering the two express exceptions to the IDEA's statute of limitations, the district court barred the Avilas' claims arising before April 26, 2008 based on when the actions complained of occurred, rather than applying the discovery rule.

The district court found that Ms. Avila signed forms agreeing with the 2006–2007 evaluation results, but this does not end the inquiry because the Avilas' awareness of the evaluations does not necessarily mean they "knew or had reason to know" of the basis of their claims before April 26, 2008. *Cf. A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1205 (9th Cir. 2016) (holding that parents' consent to a disabled child's placement does not waive later challenges to the placement under Title II of the Americans with Disabilities Act and § 504 of the Rehabilitation Act, "at least where the issue is one that requires specialized expertise a parent cannot be expected to have"). Other courts have held that the "knew or had reason to know date" stems from when parents know or have reason to know of an alleged denial of a free appropriate public education under the IDEA, not necessarily when the parents became aware that the district acted or failed to act. *See, e.g.*, *Somoza v. N.Y. City Dep't of Educ.*, 538 F.3d 106, 114 (2d Cir. 2008) (holding that the "knew or should have known" date occurred when parent viewed a child's rapid improvement in a new program); *Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275, 1288 (11th Cir. 2008) (holding the "knew or should have known date" occurred after new evaluation and declining to hold that "famil[ies] should be blamed for not being experts about learning disabilities").

Because the district court barred the Avilas' pre-April 2008 claims based on when the District's actions occurred,

we remand to the district court to make findings and address the statute of limitations under the standard we adopt here, namely when the Avilas "knew or should have known about the alleged action[s] that form[] the basis of the complaint." *See* § 1415(f)(3)(C).

Each party shall bear its own costs.

**REVERSED and REMANDED.**