LYNCH, Circuit Judge.
These appeals stem from a complaint filed by Ms. S. with the Maine Department of Education ("MDOE") in May 2013 alleging violations of the Individuals with Disabilities Education Act ("IDEA"). The state due process hearing officer dismissed as untimely Ms. S.'s claims about her son B.S.'s education in school years 2009-2010 and 2010-2011 and found no violations as to school years 2011-2012 and 2012-2013.
In this second decision from this court, we hold that Maine has established a two-year statute of limitations for due process complaints and that it has done so to align its statute of limitations with the IDEA's. Ms. S.'s claims about 2009-2010 and 2010-2011 are thus time barred. More specifically, we reverse the district court's ruling that our earlier decision in Ms. S. v. Regional School Unit 72 (Ms. S. I), 829 F.3d 95 (1st Cir. 2016), foreclosed this interpretation of Maine's Unified Special Education Regulation ("MUSER"), as well as the district court's judgment that Ms. S.'s claims were timely. See Ms. S. v. Reg'l Sch. Unit 72, No. 2:13-CV-453-JDL, 2017 WL 5565206, at *7-11 (D. Me. Nov. 20, 2017). And we reject Ms. S's proposed construction of MUSER, her waiver argument, and her contention that Regional School Unit 72 ("RSU 72") misled her. We *45 remand with instructions to dismiss her action with prejudice.
I.
A. Legal Background
1. The IDEA
The IDEA requires states receiving federal special education funds to provide eligible children with a free appropriate public education, or FAPE. 20 U.S.C. § 1412(a)(1). Parents concerned that their child is not receiving a FAPE can request a due process hearing before a "State educational agency" in accordance with procedures "determined by State law or by the State educational agency." Id. § 1415(f)(1)(A). State procedures must be consistent with the IDEA's guidelines, which are laid out at 20 U.S.C. § 1415. See Burlington v. Dep't of Educ. for the Comm. of Mass., 736 F.2d 773, 783-85 (1st Cir. 1984).
Section 1415 did not initially include a statute of limitations, but when Congress reauthorized the IDEA in 2004, it addressed the timeline for due process hearings in three provisions. First, at § 1415(b)(6)(B), in a subsection covering various "[t]ypes of procedures," the IDEA states that a party may file a complaint that:
sets forth an alleged violation that occurred not more than 2 years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for presenting such a complaint under this subchapter, in such time as the State law allows, except that the exceptions to the timeline described in subsection (f)(3)(D) shall apply to the timeline described in this subparagraph.
20 U.S.C. § 1415(b)(6)(B) (emphasis added).
Second, § 1415 describes due process hearings with particularity, at § 1415 (f). Section 1415(f)(3)(C) provides:
A parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for requesting such a hearing under this subchapter, in such time as the State law allows.
Id. § 1415(f)(3)(C) (emphasis added).
Third, the statute outlines the "[e]xceptions to the timeline" referenced at § 1415(b)(6)(B). One exception applies where "the parent was prevented from requesting the hearing due to ... specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the complaint." Id. § 1415(f)(3)(D).
In 2015, the Third Circuit held in G.L. v. Ligonier Valley School District Authority, 802 F.3d 601, 604-05 (3d Cir. 2015), that " § 1415(b)(6)(B) is simply an inartful attempt to mirror § 1415(f)(3)(C)'s two-year statute of limitations." In 2017, the Ninth Circuit concluded the same. See Avila v. Spokane Sch. Dist. 81, 852 F.3d 936, 937 (9th Cir. 2017).
2. MUSER
In 2007, Maine enacted a state-specific time limitation, which is provided in MUSER. MUSER mirrors the language of the IDEA. First, MUSER § XVI.5.A(2) tracks the language of 20 U.S.C. § 1415(b)(6)(B) and states:
The due process hearing request must allege a violation that occurred not more than two years before the date the parent ... knew or should have known about the alleged action that forms the basis of the due process hearing request.
*46 Me. Code R. 05-071, Ch. 101 ("MUSER") § XVI.5.A(2) (emphasis added). Second, MUSER § XVI.13.E tracks the language of 20 U.S.C. § 1415(f)(3)(C) and reads:
A parent ... must request an impartial hearing on their due process hearing request within two years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the due process hearing request.
Id. § XVI.13.E (emphasis added). Third, at § XVI.13.F, MUSER describes the "[e]xceptions to the timeline" provided at § 1415(f)(3)(D) of the IDEA. Id. § XVI.13.F.
B. Procedural Background
Our decision in Ms. S. I offers background on B.S.'s education. See 829 F.3d at 100-02. Here, we give the relevant procedural facts.
Ms. S. filed a due process hearing request in May 2013 alleging that B.S. had not received a FAPE in his four years of high school, from 2009 through 2013. The Maine hearing officer dismissed as untimely the claims about B.S.'s ninth and tenth grade years because they had been filed more than two years after Ms. S. knew or should have known of any IDEA violations. On B.S.'s eleventh and twelfth grade years, the hearing officer determined that B.S. had received a FAPE, except during a short period when he was between schools.
Ms. S. sought judicial review in federal district court. She did not contest that the ninth and tenth grade claims had been filed more than two years after the reasonable discovery date. Instead, she challenged MUSER's two-year statute of limitations as invalid under the Maine Administrative Procedure Act ("MAPA"). The time periods at MUSER §§ XVI.5.A(2) and XVI.13.E had been changed from four to two years in a 2010 rulemaking. Ms. S. alleged that procedural errors during that rulemaking invalidated the change in the time period at § XVI.13.E. About § XVI.5.A(2), she argued not that the change was invalid but that it was irrelevant: § XVI.5.A(2), she said, established not a statute of limitations but a separate "look-back term" restricting relief to violations that occurred up to two years before the reasonable discovery date.
The district court ruled that the revision of the statute of limitations to two years was valid and that Ms. S. could not bring her claims about B.S.'s ninth and tenth grade years under the specific misrepresentation exception. The district court also agreed with the hearing officer's FAPE determination. Ms. S. appealed. The school district, as appellee, defended against her claims of error.
Our first decision in Ms. S. I affirmed the district court's FAPE judgment. 829 F.3d at 113-15. The decision vacated and remanded on the timing issue after finding errors in the district court's application of MAPA. Id. at 100. Ms. S. I did not rule on the statute of limitations issue. Holding that the record was "insufficient," we remanded to the district court for further factfinding and reevaluation. Id.
On remand, the district court immediately granted MDOE leave to intervene, limited to the issue of whether MUSER had a valid two-year statute of limitations.[1] MDOE was ordered to "compile a record of relevant administrative and legislative proceedings," and it later submitted over 500 pages of materials. In her briefing, Ms. S. maintained that the change at § XVI.13.E was void under MAPA.
*47 MDOE and RSU 72 offered a reworking of their view of the legal framework: the two MUSER provisions, they argued, mirror the IDEA and, like that statute, establish a single statute of limitations, not a statute of limitations and a "look-back term." Rejecting MDOE and RSU 72's reading as foreclosed by Ms. S. I, the district court agreed with Ms. S.'s MAPA arguments and held that her claims were timely. RSU 72 and MDOE both appealed to this court.
II.
We address two threshold arguments before turning to the timing limitations question.
A. Law of the Case
"The law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.' " United States v. Moran, 393 F.3d 1, 7 (1st Cir. 2004) (quoting Arizona v. California, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983), supplemented by 466 U.S. 144, 104 S.Ct. 1900, 80 L.Ed.2d 194 (1984) ). One form of the doctrine, known as the mandate rule, prohibits a trial court from reopening issues decided by an earlier appellate ruling in the same case. Id. According to the district court, Ms. S. I"viewed the MUSER Look-Back Term and Filing Limitation rules as separate, 'unambiguous' provisions." Ms. S., 2017 WL 5565206, at *6. That "construction of the MUSER rules in this case, as the law of the case, is controlling," the district court held. Id. at *7. The application of the law of the case doctrine is a question of law, which we review de novo. Buntin v. City of Boston, 857 F.3d 69, 72 (1st Cir. 2017).
Another form of the doctrine binds successor appellate panels to holdings of earlier appellate panels. Id. This branch of the doctrine is "flexible," and has its exceptions. Ellis v. United States, 313 F.3d 636, 646 (1st Cir. 2002) ; see also Bryan Garner et al., The Law of Judicial Precedent § 59 (2016) (detailing exceptions). The parties spar over whether Ms. S. I bars us from considering the theory that the two provisions of MUSER, §§ XVI.5.A(2) and XVI.13.E, contain a single statute of limitations.
For the law of the case doctrine to be a bar in either form, the issue must have been " 'actually considered and decided by the appellate court,' or a decision on the issue must be 'necessarily inferred from the disposition on appeal.' " Field v. Mans, 157 F.3d 35, 40 (1st Cir. 1998) (quoting Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd., 41 F.3d 764, 770 (1st Cir. 1994) ). In short, "[p]rior holdings, as opposed to dicta, measure the rule's reach." Garner et al., supra, § 54.
Ms. S. I did not reach the issues involved here. The district court concluded that our prior opinion had held that MUSER contained both a look-back term and a filing limitation. The opinion did no such thing. The parties did not dispute and did not brief the MUSER interpretive issue now before us. Instead, Ms. S. I simply used the terminology the parties had used in the briefs, which described § XVI.5.A(2) as the "look-back term" and § XVI.13.E as the "filing limitation." This reading was not, as M. S. calls it, a "basic legal conclusion ... central to [ Ms. S. I's] analysis." It was presented only as "[b]ackground." Ms. S. I, 829 F.3d at 100-02. And MUSER played no essential role, explicit or implicit, in any of Ms. S. I's remand instructions to the district court. The prior panel's first two remand instructions both dealt only with state administrative law. See ids="4340196" index="34" url="https://cite.case.law/f3d/829/95/">id. at 105-09. And the third ordered the district *48 court to "reevaluate the[ ] content" of certain legislative materials.[2] Id. at 112.
Independently, even if a holding from Ms. S. I did overlap (and none do) with an issue we are now asked to consider, the law of the case doctrine would not be a hurdle. An exception to the doctrine would justify our addressing the issues here: Everything the panel majority said in Ms. S. I was provisioned on the "insufficient" record in that first appeal. Id. at 100. Decisions made on an "inadequate record or ... designed to be preliminary or tentative" are excepted from the law of the case doctrine. Ellis, 313 F.3d at 647.[3] In sum, the law of the case doctrine does not bar consideration of the theory that MUSER has one statute of limitations mirroring the IDEA's. The district court erred.
B. Waiver
We must deal with one more objection. Ms. S. contends that the doctrine of waiver prohibits RSU 72 from arguing that MUSER has a single statute of limitations because RSU 72 did not do so in its briefing in Ms. S. I.[4] RSU 72 was the appellee, not the appellant, in Ms. S. I. While "an appellee might in some situations be required to raise" an alternative argument supporting affirmance "in its appellate briefs" to preserve that argument for later appeals, this court found no waiver of such an argument in Field v. Mans. See 157 F.3d at 41-42 ; see also Field v. Mans, 516 U.S. 59, 78-79, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (Ginsburg, J., concurring) (suggesting that the argument was not waived and should be considered in future proceedings). In United States v. Moran, we also found no waiver of claims of error which were not raised by defendants as appellees in prior appeal of a "judgment ... entirely favorable to the appellee."[5] 393 F.3d at 12.
These cases reflect the general rule that "the failure of an appellee to have raised all possible alternative grounds for affirming the district court's original decision, *49 unlike an appellant's failure to raise all possible grounds for reversal, should not operate as a waiver." Schering Corp. v. Ill. Antibiotics Co., 89 F.3d 357, 358 (7th Cir. 1996) ;[6] see also, e.g., Eichorn v. AT&T Corp., 484 F.3d 644, 657-58 (3d Cir. 2007) ("As [appellees in the previous appeal], [defendants] were not required to raise all possible alternative grounds for affirmance to avoid waiving those grounds."); Indep. Park Apartments v. United States, 449 F.3d 1235, 1240 (Fed. Cir.), decision clarified on reh'g, 465 F.3d 1308 (Fed. Cir. 2006) ("As appellee, the government was not required to raise all possible alternative grounds for affirmance in order to avoid waiving any of those grounds."); Crocker v. Piedmont Aviation, Inc., 49 F.3d 735, 740 (D.C. Cir. 1995) (finding no waiver of issue omitted in prior appeal by then-appellee).
The differing roles of appellees and appellants in framing the issues and in presenting arguments justifies differing waiver rules on subsequent appeal. See Crocker, 49 F.3d at 741 (weighing appellees' "procedural disadvantage"). This differentiation also makes practical sense: application of the waiver rule to former appellees' omitted arguments would create "judicial diseconomies." Id. at 741 (emphasis omitted); see also Field, 157 F.3d at 41-42. It would fuel a multiplication of arguments by appellees, even if "entirely redundant." Field, 157 F.3d at 42 ; see also Crocker, 49 F.3d at 740 ("[F]orcing appellees to put forth every conceivable ground for affirmance might increase the complexity and scope of appeals."). And it would incentivize "dubious cross-appeal[s]" by appellees to fully air their alternative grounds. Field, 157 F.3d at 41-42 ; see also Crocker, 49 F.3d at 741.
Whether application of this general rule is justified "depends on the particular facts" of the case. Field, 157 F.3d at 41. And the facts do not support a finding of waiver in RSU 72's appeal. Ms. S., as appellant, not RSU 72, as appellee, "defined the battleground on the first appeal." Crocker, 49 F.3d at 740. Her briefing adopted the look-back term and filing limitation framework. To be sure, RSU 72 had an opportunity to advance a one-statute-of-limitations reading in its response brief in Ms. S. I, as the basis for an alternative ground on which it should prevail. But it would have been difficult, if not impossible, for RSU 72's response brief to both defend the district court's decision and to present, as the basis for an alternative ground, a reworking of the interpretative framework assumed by the district court. And, had RSU 72 done this, it would not have had a chance to answer Ms. S.'s reply brief.
Further, as Ms. S. has conceded, the argument does not apply to MDOE because MDOE was not a party to the first appeal. MDOE, like RSU 72, reads MUSER to contain a single statute of limitations, and has strongly urged us to so hold. As MDOE and RSU 72 argue, the issue at hand is one of "public concern" -- timelines for IDEA due process hearings affect children, parents, school districts, states, and taxpayers.
*50 Nat'l Ass'n of Soc. Workers v. Harwood, 69 F.3d 622, 629 (1st Cir. 1995). There is a strong public interest in a clear and correct ruling on the purely legal question of how to read Maine's statute of limitations for IDEA due process hearings. See id. at 627-29 (finding no waiver of publicly important and compelling legal argument); Sindi v. El-Moslimany, 896 F.3d 1, 28 (1st Cir. 2018) (same).
C. MUSER's Statute of Limitations
1. Interpreting the Regulation
We hold that Maine intended to adopt a two-year limitations period that mirrors the IDEA's timing provisions. This intent is evident from the language of the provisions: as noted, MUSER § XVI.5.A(2) mirrors 20 U.S.C. § 1415(b)(6)(B) and MUSER § XVI.13.E mirrors 20 U.S.C. § 1414(f)(C)(3). Further, at § I, MUSER states, "[t]hroughout this regulation the Department has reflected the federal statute and regulatory requirements in non-italicized text," while, "State requirements are in italicized text." MUSER § I. The provisions that concern us contain no relevant italics; they vary little from the "federal statute and regulatory requirements."[7]
So, we turn to the IDEA to determine how to read MUSER. The federal Department of Education stated in 2016 that "[t]he statute of limitations in section [1415(b)(6)(B) ] is the same as the statute of limitations in section [1415(f)(3)(C) ]." Assistance to States for the Education of Children with Disabilities and Preschool Grants for Children With Disabilities, 71 Fed. Reg. 46,540, 46,706 (Aug. 14, 2006). We hold that the IDEA has a single two-year statute of limitations regulating the amount of time to file a complaint after the reasonable discovery date. In holding this, we join the Third and Ninth Circuits. See G.L., 802 F.3d at 604-05 ; Avila, 852 F.3d at 937.
When Congress writes a statute of limitations, it chooses a rule from among several types. See, e.g., TRW Inc. v. Andrews, 534 U.S. 19, 32, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (discussing various types). One option is the occurrence rule -- that is, counting from the date of the violation. See G.L., 802 F.3d at 613. Another option is the discovery rule, which counts from the date of discovery. See ibr.US_Case_Law.Schema.Case_Body:v1">id. Section 1415(b)(6)(B) defies categorization: in counting from the injury date to the reasonable discovery date, it appears to be a hybrid of these two rules. Like our sister circuits, we doubt that Congress intended to invent a new type of timing limit or to sneak a "remedy cap" into § 1415(b)(6)(B). See G.L., 802 F.3d at 613-15 ; Avila, 852 F.3d at 941-42. Indeed, the Third Circuit traced the hints of the occurrence rule in § 1415(b)(6)(B) to a drafting error during the reconciliation of the House and Senate versions of the 2004 IDEA reauthorization. G.L., 802 F.3d at 622-23 (explaining that the House version had used the occurrence rule and identifying errors in conforming that version to the Senate's). Section 1415(f)(3)(C), on the other hand, is clear: it establishes a discovery rule. As a result, in the IDEA, a single "discovery rule controls." G.L., 802 F.3d at 613.
Ms. S. disputes that MUSER can also be read to establish a two-year statute of limitations but not a look-back term. She points primarily to MUSER's language. But the reference to the date of the "alleged action" in the text of § XVI.5.A(2) is a replication of the IDEA's drafting mistake, not evidence that Maine intended to set up two separate state standards.
*51 Unconvinced by Ms. S.'s textual arguments, we conclude that MUSER follows the IDEA in establishing a single statute of limitations that runs from the reasonable discovery date to the filing date.
In addition to being contrary to the state's intent in designing MUSER, Ms. S.'s reading could put MUSER in active conflict with federal law. Because " § 1415(b)(6)(B) is simply an inartful attempt to mirror § 1415(f)(3)(C)'s two-year statute of limitations," G.L., 802 F.3d at 604-05 ; see also Avila, 852 F.3d at 942, the IDEA likely authorizes states to enact a single state-specific statute of limitations, not a look-back term and a filing limitation. In fact, most states that have chosen to enact a state-specific "explicit time limitation," see G.L., 802 F.3d at 617, including Massachusetts, see Michelle K. v. Pentucket Reg'l Sch. Dist., 79 F.Supp.3d 361, 372-73 (D. Mass. 2015) (discussing BSEA Hearing Rule I(C) ), and New Hampshire, see N.H. Rev. Stat. Ann. § 186-C:16-b, I; see also Pass v. Rollinsford Sch. Dist., 928 F.Supp.2d 349, 364 (D.N.H. 2013), have done just that: enacted a single statute of limitations. Ms. S. points to no states that have adopted a look-back term and a filing limitation.
2. Application to Ms. S.'s Claims
It follows that Ms. S.'s claims about the 2009-2010 and 2010-2011 school years were untimely when filed in May 2013. As Ms. S. concedes, these claims alleged violations that Ms. S. knew or should have known about during school years 2009-2010 and 2010-2011. The claims were more than two years old when filed, and the version of MUSER in force in May 2013 stated that the statute of limitations was two years. MUSER §§ XVI.5.A(2), XVI.13.E. The district court erred in ruling that Ms. S.'s claims were timely.
We have no reason to reach the state law issue of whether the MDOE complied with MAPA in promulgating the 2010 amendments to MUSER. It does not affect the outcome of the case. If there were no state law procedural errors during the rulemaking or if the errors were insubstantial or harmless, then MUSER's statute of limitations was validly set at two years as a matter of state procedural law. See 5 Me. Rev. Stat. Ann. § 8058(1). Likewise, if procedural errors were to render the change from four to two at § XVI.13.E void under MAPA, then we would conclude that Maine lacked a valid "explicit time limitation" and so the federal default, also set at two years, would apply. See 20 U.S.C. §§ 1415(b)(6)(B) ; 1415(f)(3)(C) (emphasis added).
The dissent concedes that the IDEA sets a single time limitations period for due process hearings; that MUSER "is intended to track the federal law"; and (as does Ms. S.) that the time limit at § XVI.5.A(2) was validly changed to two years during the 2010 rulemaking. Nonetheless, the dissent rejects our conclusion that, if there were invalidating procedural errors, the federal default would step in. It protests that we should not apply the federal default because the IDEA does not require states to adopt the federal limitations period. That is true, but it is beside the point here. MDOE has consistently taken the position that MUSER's timing provisions parallel the IDEA's in structure. Significantly, during the 2010 rulemaking, MDOE's concise summary in the rulemaking Notice explained that "the statute of limitations for due process hearings will be changed to the federal standard of two years." That is, MDOE has always viewed MUSER's statute of limitations as tracking the federal law's.[8] The *52 IDEA only provides for one statute of limitations,[9] so it follows that if the 2010 rulemaking somehow left Maine with two different limitations periods, the state lacked its intended "explicit time limitation," and the federal default should govern.
In short, a two-year statute of limitations was in force in 2013 when Ms. S. filed her due process hearing request and that request was therefore untimely.
D. Specific Misrepresentation Exception
Ms. S. finally argues that, even if a two-year statute of limitations applies, her claims should be allowed under the specific misrepresentation exception. Ms. S. claims that she failed to file earlier because of statements by the district that B.S.'s academic performance made him ineligible for IDEA services. As Maine has implemented the IDEA, academic as well as "functional" performance determine eligibility. MUSER § II.10-II.11; see also Mr. I v. MSAD No. 55, 480 F.3d 1, 11 (1st Cir. 2007) (describing how federal and state regulations interact to define IDEA-eligible disabilities).
The district court, in its first decision, determined that Ms. S. did not qualify for the exception because no misrepresentations had occurred. We declined to consider the issue then. Ms. S. I, 829 F.3d at 113. Ms. S. does not cross appeal it here but raises it as an alternative ground for relief.
The record reveals no misrepresentations -- intentional or otherwise. The school district never told Ms. S. that academic performance alone determined eligibility. Rather, district employees, as the record and the district court's first decision show, discussed B.S.'s academic performance alongside other factors, like his social, behavioral, and emotional development. We hold that Ms. S.'s claims regarding B.S.'s ninth and tenth grade years are not allowed under the specific misrepresentation exception to MUSER's statute of limitations.
III.
We reverse and remand to the district court with instructions to dismiss with prejudice.

The district court rejected MDOE's request to intervene on a second question: whether B.S. had received a FAPE in ninth and tenth grades.

In guiding the district court's use of legislative evidence, Ms. S. I did remark on MUSER. Ms. S. had argued that courts can never look at legislative intent in evaluating MAPA compliance, so we noted that "[o]rdinarily, the Law Court does not look beyond language approved by the Legislature to determine the Legislature's intent where, as here, the language is unambiguous." Ms. S. I, 829 F.3d at 110. This was not a holding that MUSER unambiguously contains two separate timing requirements. Our directive to the district court was evidence-specific and emphatically was not that legislative intent is irrelevant because of MUSER's clarity. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 110-12. Further, what we found clear was circumscribed: that the proposed version of § XVI.13.E said "four," not "two." Id. at 110.

Relevant changes in the law -- notably, other circuits' determinations that the IDEA contains a single statute of limitations -- and in the facts -- including new administrative and legislative evidence -- reinforce our conclusion that reconsideration is proper. Cf. Nkihtaqmikon v. Impson, 585 F.3d 495, 498 (1st Cir. 2009) ("We could revisit our own earlier decision if [the appellant] could show that controlling legal authority has changed dramatically; [or could] proffer significant new evidence, not earlier obtainable in the exercise of due diligence" (internal quotation marks omitted) ); Garner et al., supra, § 59 ("[I]n exceptional circumstances involving a dramatic change in controlling legal authority, a court may deviate from the law of the case.").

RSU 72 developed the argument that MUSER has a single statute of limitations mirroring the IDEA's on remand in the district court.

Ms. S. leans heavily on Moran, but that case does not support her position. Moran ultimately found no waiver by former appellees, reasoning that they had not been required to raise in the first appeal "irrelevant" or "redundant" arguments. 393 F.3d at 12 (quoting Field, 157 F.3d at 41-42 ).

Ms. S. embraces Schering Corp., 89 F.3d at 358-59, but it hurts rather than helps her. The Seventh Circuit found waiver by a former appellee in circumstances entirely unlike these. The court found waiver of a challenge, omitted in the first appeal, to a trial court's ruling excluding evidence supporting affirmance. See ids="9042362" index="90" url="https://cite.case.law/f3d/89/357/#p358">id. In the second appeal, the former appellee sought to reopen the previous ruling based on "newly discovered evidence" -- i.e., the evidence excluded by the district court and not raised in the first appeal. Id. at 359. Schering explicitly distinguished that situation from the one we face, in which "an alternative ground for affirmance [was omitted] in the previous round" by appellee and no waiver of that argument would be found on subsequent appeal. Id. at 358.

Only a state-specific acronym -- "SAU," or school administrative unit -- is italicized in the provisions. See MUSER §§ XVI.5.A(2), XVI.13.E.

Although the dissent agrees that MUSER tracks the federal law, it suggests that MDOE has not always held this view. It embraces Ms. S.'s unsupported assertion that a 2011 decision by an MDOE hearing officer, which, in dicta, described § XVI.5.A(2) and § XVI.13.E as distinct, represented the accepted understanding among MDOE hearing officers. But MDOE emphasizes that Ms. S. has pointed to no other, similar statements by hearing officers. And even if she had, MDOE, whose hearing officers are independent, cf. MUSER § XVI.4.A(4)(c) (requiring the state to enforce due process hearing decisions), says that it has never adopted the view expressed in the hearing officer's 2011 dicta. MDOE is best positioned to state its views.

Contrary to the dissent's suggestion, it is immaterial to this case that the Third Circuit's decision in G.L. holding that the IDEA contains a single time limitation for due process hearings post-dated the 2010 rulemaking. G.L. held, as we do today, that the IDEA has contained a single statute of limitations since the relevant provisions' enactment in 2004.